OPINION
{¶ 1} These timely, consolidated appeals come for consideration upon the records in the trial court, the parties' briefs, and their oral arguments before this Court. Appellants, Ronald Bowersock and Roy S. Bowersock, appeal the decision of the County Court, Monroe County, Ohio finding them both guilty of disorderly conduct in violation of R.C.2917.11(A)(1). Because the Bowersocks were not given the opportunity to present closing arguments, their convictions are vacated and this matter is remanded for a new trial.
 {¶ 2} This case stems from an incident that took place on June 24, 2005 at one of the gates of the Ormet Corporation during a labor strike. The altercation occurred after some contract truck drivers were exiting the plant in a van when Roy, a union picketer, approached the van and yelled at its occupants. It is contested what happened when Roy approached the van as there are multiple reports of what occurred. However, two videotapes taken from security cameras were admitted into evidence which show Roy approaching the van and then backing away from the van with Brian Bartlett in his arms. The video shows other occupants in the van getting out and joining in the scuffle. The video also shows Ronald grabbing Bartlett from behind and Roy throwing punches at that person. Soon after, the altercation ended and the three passengers got back into the minivan and the picketers returned to their post.
 {¶ 3} The Bowersocks were later charged with disorderly conduct in violation of R.C. 2917.11(A)(1), a minor misdemeanor. They were both given a non-jury trial and were each convicted of one count of disorderly conduct. It is from that decision that the Bowersocks now appeal.
 Right to Closing Argument {¶ 4} As their first assignment of error, the Bowersocks assert:
 {¶ 5} "Defendant was deprived of due process when the court indicated that it did not need closing argument."
 {¶ 6} More specifically, after the close of evidence, the following transpired:
 {¶ 7} "Mr. Cogan: The defense rests, Your Honor.
 {¶ 8} The Court: All right. I'm, going to take the case under advisement, and I will review the statute, and I'm going to review the DVD and the tape again and I'll issue a written opinion within the next forty-eight hours or so. All right. We'll be in recess.
 {¶ 9} Mr. Cogan: Your Honor, you don't want to hear any argument?
 {¶ 10} The Court: No, I don't need to.
 {¶ 11} Mr. Cogan: Do you want something in writing?
 {¶ 12} The Court: No, I don't believe I need anything.
 {¶ 13} Mr. Cogan: Okay.
 {¶ 14} WHEREUPON, the Court was recessed."
 {¶ 15} In Herring v. New York (1975), 422 U.S. 853, 859,95 S.Ct. 2550, 45 L.Ed.2d 593, the United States Supreme Court held "the overwhelming weight of authority, in both federal and state courts, holds that a total denial of the opportunity for final argument in a nonjury criminal trial is a denial of the basic right of the accused to make his defense."
 {¶ 16} The Herring holding is unquestionably applied to situations where defense counsel requests an opportunity to give closing arguments and is clearly denied the right to do so. In Ohio, courts have also extended its application to cases where the trial court by its actions or language denies the right to closing argument.
 {¶ 17} For example, in State v. Jack, 156 Ohio App.3d 260,2004-Ohio-775, the trial judge announced that he would "take this matter under advisement" and return to the bench "momentarily." Upon returning to the bench, the judge made the following statement:
 {¶ 18} "I did indicate to the Court Reporter that I did not give counsel an opportunity to give closing remarks, because this is a Bench trial. There is no need to persuade one way or another as far as the Jury is concerned."
 {¶ 19} The Second District noted that there was no indication from the transcript that trial counsel asked, on the record, for an opportunity to present argument. Additionally, the record did not demonstrate that defense counsel raised any objection. Regardless the Second District opined:
 {¶ 20} "We need not decide, in this case, whether trial counsel's failure to assert a right to present closing argument constitutes a waiver of that right where the trial court has taken no position with respect to the existence of the right. We conclude that the trial court's statement to counsel upon returning to the bench reasonably led trial counsel to conclude that a request for the opportunity for closing argument, or an objection to the lack of the opportunity, would have been unavailing.
 {¶ 21} "The reason for requiring a litigant to preserve error in the record by asserting a right or by objecting to a trial court's ruling is to prevent inadvertent errors by the trial court. Where a trial judge simply forgets to afford counsel the opportunity to make closing argument, it is reasonable to expect trial counsel, as an officer of the court, to remind the judge that his client is entitled to argue the case. Here, the trial judge made it clear, on the record, that he was not going to allow closing argument, upon the mistaken belief that a litigant has no right to closing argument at a bench trial. Under the circumstances of this case, we conclude that Jack was erroneously denied his right to closing argument and did not knowingly and voluntarily waive that right." Id. at 265.
 {¶ 22} We are now faced with a similar situation in that counsel offered to give closing arguments and then offered to submit something in writing. The trial court responded that it wouldn't need them. This is obviously not the cut and dry situation presented to theHerring court, but it is hardly an invited error as counsel did in fact raise the issue of closing arguments. Because we find the principle that a known right must be affirmatively waived to be so significant, we conclude the Bowersocks' first assignment of error to be meritorious.
 Selective Prosecution {¶ 23} As their third assignment of error, the Bowersocks assert the following:
 {¶ 24} "The conviction of the Bowersocks, combined with the acquittal of two people crossing the picket line and the failure even to prosecute the other main participant in the fight violates due process."
 {¶ 25} Essentially, the Bowersocks are asserting a selective prosecution claim which would be an equal protection violation. Before turning to the merits of their claim, however, it is apparent that the Bowersocks failed to raise this issue below. A failure to raise constitutional issues at the trial level results in a waiver of those issues on appeal. State v. Gee, Scioto App. No. 99CA2656, 2000-Ohio-1963. Even if the Bowersocks had properly raised this at the trial court level the argument would fail.
 {¶ 26} The State denies equal protection of the laws when it makes "unjust and illegal discriminations between persons in similar circumstances, material to their rights * * *." State v. Flynt (1980),63 Ohio St.2d 132, 134, 407 N.E.2d 15, quoting Yick Wo v. Hopkins
(1886), 118 U.S. 356, 373-374, 6 S.Ct. 1064, 30 L.Ed. 220. In order to establish a case of "selective prosecution," a criminal defendant must make a prima facie showing: "(1) that, while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, and (2) that the government's discriminatory selection of him for prosecution has been invidious or in bad faith, i.e., based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights." Id.
 {¶ 27} The defendant's burden of establishing discriminatory prosecution is a heavy one. State v. Freeman (1985), 20 Ohio St.3d 55,58, 485 N.E.2d 1043. "The mere failure to prosecute other violators of the statute which appellants were charged with violating does not establish the defense of selective prosecution." Id. Selectivity in enforcement does not constitute a constitutional violation unless the discrimination is "intentional or purposeful." Flynt,63 Ohio St.2d at 134, 407 N.E.2d 15, quoting (1944), 321 U.S. 1, 8, 64 S.Ct. 397,88 L.Ed. 497. Moreover, the mere existence of a potential discriminatory purpose does not, by itself, show that such purpose motivated a particular defendant's prosecution. Freeman, 20 Ohio St.3d at 58,485 N.E.2d 1043.
 {¶ 28} Here, not only have the Bowersocks failed to cite to facts in the record that support their claim, they have completely neglected to even allege that their prosecution was based on some unconstitutionally impermissible consideration. Accordingly, this assignment of error is meritless.
 Federal Preemption {¶ 29} As their fifth assignment of error, the Bowersocks allege:
 {¶ 30} "The statutory element of 'creating a condition by any act that serves no lawful and reasonable purpose shows that the prosecution is preempted, or at least informed by federal labor law."
 {¶ 31} The Third District addressed this same type of federal preemption claim in State v. Reinhart (Mar. 4, 1999), 3d Dist. No. 13-98-64. In that case the defendant was charged with menacing after he called out to a woman crossing the picket line, stating that he knew where she lived and that he would be coming over. The defendant moved to dismiss the charge claiming that it was preempted by the exclusive jurisdiction of the National Labor Relations Board. The trial court denied the motion.
 {¶ 32} The Third District upheld the denial explaining:
 {¶ 33} "The purpose of the National Labor Relations Board ("NLRB") is not punitive. Teamsters Local 372 v. Detroit Newspapers (1998), 155 L.R.R.M.2089. This leaves the state courts free to respond to all civil and criminal matters that arise from, but are in some way independent of, the underlying labor dispute. Id. When the predicate offense is only unlawful because of the labor laws, the offense is preempted. Id. Conversely, if the offense is merely a "peripheral concern" of the labor laws, the preemption doctrine does not apply. Vaca v. Sipes (1967),386 U.S. 171, 17 L.Ed.2d 842, 87 S.Ct. 903.
 {¶ 34} "Here, the incident was not of importance to the collective bargaining dispute. Additionally, the trial court had no need to refer to any federal law to resolve the issue. The charge was menacing and is a state offense, regardless of the situation. Based upon the circumstances surrounding the charge, the case is a peripheral concern of the labor laws and the preemption doctrine does not apply."
 {¶ 35} The same type of analysis would apply here. The Bowersocks were charged based upon physical conduct which violated a criminal state statute. Because this violation appears to be one of "peripheral concerns" described by the United States Supreme Court, it would not appear that federal labor law would preempt state law in this case. Accordingly this assignment of error is also meritless.
 {¶ 36} The Bowersocks raise these additional assignments of error:
 {¶ 37} "The verdict was against the manifest weight of the evidence."
 {¶ 38} "The verdicts were based upon insufficient weight of the evidence."
 {¶ 39} "The state's evidence was so various that the defendant was deprived of due process in trying to meet it."
 {¶ 40} These remaining assignments of error are rendered moot due to the resolution of the previous assignments of error.
 {¶ 41} Accordingly, Bowersocks' convictions are vacated and this cause is remanded to the trial court for a new trial.
Donofrio, P.J., concurs.
DeGenaro, J., concurs.