[Cite as *State v. Detienne*, 2017-Ohio-9105.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ATHENS COUNTY

STATE OF OHIO, :
CITY OF ATHENS, :
:
    Plaintiff-Appellee, : Case No. 16CA13
:
v. : <u>DECISION AND</u>
: <u>JUDGMENT ENTRY</u>
KERRY DETIENNE, :
:
    Defendant-Appellant. : Released: 12/11/17

APPEARANCES:

Timothy Young, Ohio Public Defender, and Terrence K. Scott, Assistant Ohio Public Defender, Columbus, Ohio, for appellant.

James Stanley, Athens City Prosecutor, Athens, Ohio, for appellee.

Hoover, J.

{¶ 1} Defendant-appellant, Kerry Detienne, ("Detienne") appeals the judgment of the Athens Municipal Court convicting him of Operating a Vehicle While Under the Influence of a Controlled Substance and Failure to Control. On appeal, Detienne contends that (1) his OVI conviction is against the manifest weight of the evidence; (2) his rights under the Confrontation Clause were violated; and (3) he received ineffective assistance of counsel. For the following reasons, we affirm the judgment of the trial court.

**I. Facts and Procedural History**

{¶ 2} Around 7:30 a.m. on March 3, 2016, Detienne, a graduate student at Ohio University, crashed his Buick sedan into a utility pole on East State Street in Athens, Ohio. When police arrived, they found Detienne sitting in the driver's seat, dazed and

confused. He had a laceration on his face and complained of neck pain. Officer Desty Flick of the Athens Police Department spoke with Detienne briefly before EMS arrived and transported him to the hospital. During their conversation, Detienne stated that he was unaware of what caused the crash. His confusion, mumbled speech, and constricted pupils caused Officer Flick to suspect that he was impaired. When Officer Flick inquired about drug or alcohol use, Detienne admitted to taking Zoloft and Adderall earlier that day. He later indicated that he had been trying some different drugs to help him manage school-related stress.

{¶ 3} At the hospital, Officer Flick cited Detienne for Operating a Vehicle Under the Influence of Alcohol or Drug of Abuse in violation of R.C. 4511.19(A)(1)(a), a misdemeanor of the first degree, and Failure to Control in violation of R.C. 4511.202, a minor misdemeanor. Detienne consented to a urine test; and after collecting the sample, Officer Flick sent it to The Ohio State University, Wexner Medical Center for testing.

{¶ 4} Later that month, Justine Pardi, a Clinical Lab Technologist at Wexner Medical Center, tested the sample; and it tested positive for hydroxyalprazolam, alprazolam, chlorpheniramine, sertraline, and an amphetamine concentration of 3,286 nanograms per milliliter—more than six times the legal limit. Based on this amphetamine concentration, Detienne was cited for Operating a Vehicle While Under the Influence of a Controlled Substance in violation of R.C. 4511.10(A)(1)(j)(i), a misdemeanor of the first degree.

{¶ 5} At trial, Detienne asserted the affirmative defense of medical authorization. He argued that although he had drugs in his system, he was not guilty of the OVI offenses

because he was taking the drugs pursuant to a lawful prescription issued by a licensed

health care professional.

{¶ 6} Ultimately, Detienne was found guilty of Operating a Vehicle While Under

the Influence of a Controlled Substance and Failure to Control but acquitted of Operating

a Vehicle Under the Influence of Alcohol or Drug of Abuse. He was sentenced to 30 days

in jail, a 180-day license suspension, and a $775 dollar fine plus court costs.[1]

{¶ 7} Detienne timely appeals.

## II. Assignments of Error

{¶ 8} Detienne assigns the following errors for our review:

Assignment of Error No. I:

> Kerry Detienne was denied his right to due process and a fair trial when
> the jury found him guilty of operating a vehicle with a prohibited
> concentration of a drug of abuse against the manifest weight of the
> evidence. Fifth and Fourteenth Amendments, United States Constitution;
> Article I, Section 10 and 16, Ohio Constitution. (Tr. p. 157-160, 168-170,
> and 188-189; Exhibit C).

Assignment of Error No. II:

> The trial court violated Mr. Detienne's rights to due process and a fair trial
> when the trial court permitted the introduction of a testimonial laboratory
> report at trial without the author's testimony, in violation of the Sixth and
> Fourteenth Amendments to the United States Constitution and Article I,
> Sections 5, 10, and 16 of the Ohio Constitution. *Bullcoming v. New
> Mexico*, 564 U.S. 647, 131 S.Ct. 2705, 180 L.Ed.2d 610 (2011);
> *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 129 S.Ct. 2527, 174
> L.Ed.2d 314 (2009). (Tr. p. 100-104, 127 and 122-125; Exhibit C).

Assignment of Error No. III:

> Mr. Detienne was denied the effective assistance of counsel at his trial, to
> which he was entitled to under the Sixth and Fourteenth Amendments to

---

[1] A majority of Detienne's sentence was suspended provided "that [he] remain a law abiding citizen for two years, that [he] complete a driver intervention program within ninety days and follow all recommendations that they may have for two years. And that [he] not operate any vehicle with alcohol or drugs of abuse in [his] system."

the United States Constitution. Mr. Detienne's counsel failed to comply
with R.C. 4511.19(E)(3). *Strickland v. Washington*, 466 U.S. 668, 104
S.Ct. 2052, 80 L.Ed.2d. 674 (1984); *Crawford v. Washington*, 541 U.S.
36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). (MTr. [sic] p. 85-87; May
23, 2016, Journal Entry).

### III. Law and Analysis

A. Detienne's Conviction was not Against the Manifest Weight of the Evidence

{¶ 9} In his first assignment of error, Detienne contends that his conviction of
Operating a Vehicle While Under the Influence of a Controlled Substance is against the
manifest weight of the evidence since he established, by a preponderance of the evidence,
the affirmative defense of medical authorization.

{¶ 10} In determining whether a criminal conviction is against the manifest
weight of the evidence, an appellate court must review the entire record, weigh the
evidence and all reasonable inferences, consider the credibility of witnesses, and
determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its
way and created such a manifest miscarriage of justice that the conviction must be
reversed. *State v. Thompkins,* 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997); *State v.
Hunter,* 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 119. "Although a court
of appeals may determine that a judgment of a trial court is sustained by sufficient
evidence, that court may nevertheless conclude that the judgment is against the weight of
the evidence." *Thompkins* at 387. But the weight and credibility of evidence are to be
determined by the trier of fact. *State v. West,* 4th Dist. Scioto No. 12CA3507, 2014-Ohio-
1941, ¶ 23. A trier of fact "is free to believe all, part or none of the testimony of any
witness who appears before it." *Id.* We defer to the trier of fact on these evidentiary
weight and credibility issues because it is in the best position to gauge the witnesses'

demeanor, gestures, and voice inflections, and to use these observations to weigh their credibility. *Id.*

{¶ 11} R.C. 4511.19(A)(1) provides:

(A)(1) No person shall operate any vehicle * * * within this state, if, at the time of the operation, any of the following apply:

(j) *Except as provided in division (K) of this section*, the person has a concentration of any of the following controlled substances or metabolites of a controlled substance in the person's * * * urine that equals or exceeds any of the following:

(i) The person has a concentration of amphetamine in the person's urine of at least five hundred nanograms of amphetamine per milliliter of the person's urine * * *.

(Emphasis added.)

{¶ 12} R.C. 4511.19(K) provides:

Division (A)(1)(j) of this section *does not apply* to a person who operates a vehicle, * * * while the person has a concentration of a listed controlled substance or a listed metabolite of a controlled substance in the person's * * * urine that equals or exceeds the amount specified in that division, if both of the following apply:

(1) The person obtained the controlled substance pursuant to a prescription issued by a licensed health professional authorized to prescribe drugs.

(2) The person injected, ingested, or inhaled the controlled substance in accordance with the health professional's directions.

(Emphasis added.)

{¶ 13} Thus, taking a drug of abuse pursuant to a lawful prescription from a licensed health professional is an affirmative defense to a charge under R.C. 4511.19(A)(1)(j). *Ohio Jury Instructions*, CR Section 711.19 (Rev. Oct.28, 2006) ("The General Assembly created the affirmative defense for per se drug violations in R.C. 4511.19(K)." *Accord* R.C. 2901.05(D)(1) (defining an affirmative defense as either "a defense expressly designated as affirmative" or "a defense involving an excuse or justification peculiarly within the knowledge of the accused, on which the accused can fairly be required to adduce supporting evidence").

{¶ 14} The defendant bears the burden of proving an affirmative defense by a preponderance of the evidence. R.C. 2901.05(A). "Preponderance of the evidence is the greater weight of the evidence; that is, evidence that [the jurors] believe because it outweighs or overbalances [in the jurors'] minds the evidence opposed to it." *Ohio Jury Instructions,* CR Section 417.29.

{¶ 15} At trial, Detienne testified that at time of the accident he was taking several medications prescribed to him by his doctor, including Adderall, Adderall XR (Extended Release), Sertraline, Alprazolam, and Fortesta, as well as a supplement called "Supreme Brain Support." He could not specifically recall taking his medication the morning of the accident; but he stated that he always took his medications everyday as prescribed. In fact, he indicated that he had been taking some of his medications for several years.

{¶ 16} Based on this testimony, Detienne argues that he established by a preponderance of the evidence that he was taking amphetamine pursuant to a lawful

prescription issued by a licensed health care professional. However, there was no testimony that Adderall, Adderall XR (Extended Release), Sertraline, Alprazolam, or Fortesta contain amphetamine. *See, e.g., In re D.F.*, 193 Ohio App.3d 78, 2011-Ohio-1004, 951 N.E.2d 99, ¶¶ 80-81 (insufficient evidence to support conviction for complicity to possess amphetamine where, inter alia, there was no testimony that Adderall contains amphetamine.); *In re Anthony M.S.,* Wis.App. No. 2010AP1669, 2011 WI App 114, *2 (June 9, 2011) (evidence insufficient to prove beyond a reasonable doubt that pills in defendant's possession contained amphetamine where no evidence was presented to show that Adderall contains amphetamine and it is not a matter of common knowledge that amphetamine is an ingredient of Adderall).

{¶ 17} There was also no testimony that Detienne's doctor—whose name was never disclosed—was a "licensed health professional." R.C. 4511.19(K). A "licensed health professional" includes (1) "[a] * * * certified nurse practitioner who holds a current, valid license to practice nursing as an advanced practice registered nurse issued under Chapter 4723 of the Revised Code"; (2) "[a] physician authorized under Chapter 4731 of the Revised Code to practice medicine and surgery, osteopathic medicine and surgery, or podiatric medicine and surgery"; or (3) "[a] physician assistant who holds a license to practice as a physician assistant issued under Chapter 4730 of the Revised Code, holds a valid prescriber number issued by the state medical board, and has been granted physician-delegated prescriptive authority." R.C. 4729.01(I). *See generally Ohio Jury Instructions,* CR Section 711.19(6)(C) (directing trial courts to use R.C. 4729.01(I)'s definition of "licensed health care professional" when instructing jury on the affirmative defense of medical authorization).

{¶ 18} The only evidence presented to support Detienne's claim of medical authorization was his testimony that he had prescriptions for his medications and that he took his medications as prescribed by his doctor—evidence of his prescriptions was never presented.[2] "The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." *State v. Breidenbach*, 4th Dist. Athens No. 10CA10, 2010–Ohio– 4335, ¶ 19, quoting *State v. Rhines*, 2d Dist. Montgomery No. 23486, 2010–Ohio3117, ¶ 39. "Although an appellate court must act as a 'thirteenth juror' when considering whether the manifest weight of the evidence requires reversal, it must give great deference to the factfinder's determination of the witnesses' credibility." *State v. Fisher,* 8th Dist. Cuyahoga No. 101365, 2015-Ohio-597, ¶ 43.

{¶ 19} For these reasons, we cannot say that the jury clearly lost its way or created a manifest miscarriage of justice in rejecting Detienne's affirmative defense and finding him guilty of Operating a Vehicle While Under the Influence of a Controlled Substance.

{¶ 20} Accordingly, we overrule Detienne's first assignment of error.

### B. The Confrontation Clause was not Violated

---

[2] Prior to trial, the City filed a motion in limine seeking to prevent Detienne from introducing evidence of his medical records at trial on the grounds that the records were hearsay. It is unclear from the record what medical records, if any, Detienne wanted to admit into evidence, but the City argued, "Presumably, [Detienne] seeks to enter his medical records into evidence to establish his prescription history as well as a possible claim that he suffered a concussion as a result of the motor vehicle accident that resulted in the charges in this case. None of the statements that contain [Detienne's] medications were made for purposes of diagnosis or treatment. * * * If [Detienne] wishes to introduce his prescription history via a medical record without the declarant's testimony, the proper medical record to submit would be the original diagnosis and statement of treatment that included use of the prescription as treatment of that diagnosis." (OP #54) The trial court granted the City's motion, concluding that "the medical records themselves will be excluded but testimony by [Detienne] will be permitted with regards to what he was prescribed * * *." (OP #145, p. 84). Detienne is not challenging this ruling on appeal.

{¶ 21} In his second assignment of error, Detienne contends that his Sixth Amendment rights were violated when the trial court admitted Pardi's report into evidence without requiring her testimony.

{¶ 22} "The Sixth Amendment's Confrontation Clause provides, 'In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him * * *.' " *State v. Maxwell,* 139 Ohio St.3d 12, 2014-Ohio-1019, 9 N.E.3d 930, ¶ 34. The Confrontation Clause of the Sixth Amendment is made applicable to the states by the Fourteenth Amendment. *State v. Issa,* 93 Ohio St.3d 49, 752 N.E.2d 904, fn. 4 (2001). Consequently, this constitutional right applies to both federal and state prosecutions, but the right of confrontation in Article I, Section 10 of the Ohio Constitution provides no greater right of confrontation than the Sixth Amendment. *State v. Arnold,* 126 Ohio St.3d 290, 2010–Ohio–2742, 933 N.E.2d 775, ¶ 12.

{¶ 23} "The United States Supreme Court has interpreted [the Sixth Amendment right to confrontation] to mean that admission of an out-of-court statement of a witness who does not appear at trial is prohibited by the Confrontation Clause if the statement is testimonial unless the witness is unavailable and the defendant has had a prior opportunity to cross-examine the witness." *Maxwell* at ¶ 34, citing *Crawford v. Washington*, 541 U.S. 36, 53–54, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). *Crawford* did not define the word "testimonial" but stated that the core class of statements implicated by the Confrontation Clause includes statements " 'made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.' " 541 U.S. at 52, 124 S.Ct. 1354, 158 L.Ed.2d 177, quoting the amicus brief of the National Association of Criminal Defense Lawyers.

{¶ 24} "It is a well-established principle that Confrontation Clause rights, like other constitutional rights, can be waived." *State v. Pasqualone*, 121 Ohio St.3d 186, 2009 -Ohio- 315, 903 N.E.2d 270, ¶ 14, citing *Brookhart v. Janis*, 384 U.S. 1, 4, 86 S.Ct. 1245, 16 L.Ed.2d 314 (1966); *Hawkins v. Hannigan*, 185 F.3d 1146, 1154 (10th Cir.1999) ("There is no doubt that a defendant may waive" the right to confrontation). *See also Magruder v. Commonwealth*, 275 Va. 283, 295, 657 S.E.2d 113 (2008) (*Crawford* did not speak to the issue of waiver of right to confrontation); *Hinojos–Mendoza v. People*, 169 P.3d 662, 668 (Colo.2007) (*Crawford* "did not alter the fact that the right to confrontation can be waived").

{¶ 25} In Ohio, a defendant can waive his right to cross-examine a laboratory analyst by failing to comply with a notice-and-demand statute. "[N]otice-and-demand statutes require the prosecution to provide notice to the defendant of its intent to use [a laboratory] analyst's report as evidence at trial, after which the defendant is given a period of time in which he may object to the admission of the evidence absent the analyst's appearance live at trial." *Melendez-Diaz v. Massachusetts,* 557 U.S. 305, 326, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009).

{¶ 26} The most frequently relied upon notice-and-demand statute is found in R.C. 2925.51. Under R.C. 2925.51(A), in any criminal prosecution for a violation of Chapters 2925 ("Drug Offenses") or 3719 ("Controlled Substances"), a qualifying laboratory report[3] stating that the substance that is the basis of the alleged offense has

---

[3] Under the statute, the laboratory report must: (1) be "from the bureau of criminal identification and investigation, a laboratory operated by another law enforcement agency, or a laboratory established by or under the authority of an institution of higher education that has its main campus in this state and that is accredited by the association of American universities or the north central association of colleges and secondary schools, primarily for the purpose of providing scientific services to law enforcement agencies and signed by the person performing the analysis"; (2) include "a copy of a notarized statement by the signer of the report giving the name of the signer and stating that the signer is an employee of the

been weighed and analyzed and stating the findings as to the content, weight, and identity of the substance and that it contains any amount of a controlled substance and the number and description of unit dosages, is admissible at trial as prima-facie evidence of the content, identity, and weight or the existence and number of unit dosages of the substance so long as the prosecuting attorney serves a copy of the report on the accused beforehand. However, "[t]he report shall not be prima-facie evidence of the contents, identity, and weight or the existence and number of unit dosages of the substance if the accused or the accused's attorney demands the testimony of the person signing the report, by serving the demand upon the prosecuting attorney within seven days from the accused or the accused's attorney's receipt of the report." R.C. 2925.51(C). The time may be extended by a trial judge in the interests of justice. *Id.*

{¶ 27} In *Pasqualone*, the Ohio Supreme Court held that "the procedures of R.C. 2925.51 adequately protect an accused's right to confrontation, so that an accused who fails to demand the testimony of the analyst pursuant to R.C. 2925.51(C) validly waives his opportunity to cross-examine the analyst." 121 Ohio St.3d 186, 2009-Ohio-315, 903 N.E.2d 270, at ¶ 44. In other words, "When the state has complied with its obligations under R.C. 2925.51, a defendant's failure to use the procedures of R.C. 2925.51(C) to demand that a laboratory analyst testify constitutes a waiver of the opportunity to cross-examine the analyst at trial and allows the analyst's report to be admitted as prima facie evidence of the test results." *Id.,* at paragraph two of the syllabus.

---

laboratory issuing the report and that performing the analysis is a part of the signer's regular duties, and giving an outline of the signer's education, training, and experience for performing an analysis of materials included under this section. The signer shall attest that scientifically accepted tests were performed with due caution, and that the evidence was handled in accordance with established and accepted procedures while in the custody of the laboratory."; and (3) "contain notice of the right of the accused to demand, and the manner in which the accused shall demand, the testimony of the person signing the report." R.C. 2925.51(A),(D).

{¶ 28} R.C. 4511.19 contains an identical provision. Under R.C. 4511.19(E)(1), in a criminal prosecution under R.C. 4511.19(A)(1)(j), a qualifying laboratory report[4] that contains an analysis of the whole blood, blood serum or plasma, breath, urine, or other bodily substance tested shall be admitted as prima-facie evidence of the information and statements that the report contains so long as the prosecuting attorney serves a copy of the report on the defendant beforehand. R.C. 4511.19(E)(1). However, the report "shall not be prima-facie evidence of the contents, identity, or amount of any substance if, within seven days after the defendant to whom the report pertains or the defendant's attorney receives a copy of the report, the defendant or the defendant's attorney demands the testimony of the person who signed the report." R.C. 4511.19(E)(3). The judge in the case may extend the seven-day time limit in the interest of justice. *Id.*

{¶ 29} Detienne admits that the State served him with a copy of Pardi's report prior to trial and that he did not demand Pardi's testimony within seven days of receiving it, as required under R.C. 4511.19(E)(3). Thus, pursuant to *Pasqualone*, Detienne waived the opportunity to cross-examine Pardi at trial; and her report was properly admitted as prima facie evidence of the test results.

---

[4] Under the statute, the laboratory report must be made by "laboratory personnel issued a permit by the department of health authorizing an analysis as described in this division that contains an analysis of the whole blood, blood serum or plasma, breath, urine, or other bodily substance tested" and contain all of the information (1) "[t]he signature, under oath, of any person who performed the analysis"; (2) "[a]ny findings as to the identity and quantity of alcohol, a drug of abuse, a controlled substance, a metabolite of a controlled substance, or a combination of them that was found"; (3) "[a] copy of a notarized statement by the laboratory director or a designee of the director that contains the name of each certified analyst or test performer involved with the report, the analyst's or test performer's employment relationship with the laboratory that issued the report, and a notation that performing an analysis of the type involved is part of the analyst's or test performer's regular duties"; and (4) "[a]n outline of the analyst's or test performer's education, training, and experience in performing the type of analysis involved and a certification that the laboratory satisfies appropriate quality control standards in general and, in this particular analysis, under rules of the department of health."

{¶ 30} Detienne also suggests that he should have been given more than seven days in which to demand Pardi's testimony. However, Detienne's assignment of error concerns whether his constitutional rights were violated when the trial court admitted Pardi's report into evidence without requiring her testimony—not whether the trial court abused its discretion in failing to extend the seven-day time limit in the interest of justice.

{¶ 31} Accordingly, we overrule Detienne's second assignment of error.

C. Detienne's Ineffective Assistance of Counsel Claim Fails

{¶ 32} In his third assignment of error, Detienne contends that his trial counsel was ineffective for failing to demand Pardi's testimony within seven days of receiving her report.

{¶ 33} Criminal defendants have a right to counsel, including a right to the effective assistance of counsel. *McMann v. Richardson,* 397 U.S. 759, 771, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970), fn. 14. To establish constitutionally ineffective assistance of counsel, a criminal defendant must show (1) that his counsel's performance was deficient and (2) that the deficient performance prejudiced the defense and deprived him of a fair trial. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

{¶ 34} "In order to show deficient performance, the defendant must prove that counsel's performance fell below an objective level of reasonable representation. To show prejudice, the defendant must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *State v. Conway,* 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 95. "Failure to establish either

element is fatal to the claim." *State v. Jones,* 4th Dist. Scioto No. 06CA3116, 2008-Ohio-968, ¶ 14.

{¶ 35} When considering whether trial counsel's representation amounts to deficient performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Strickland* at 689. Thus, "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Id,* quoting *Michel v. Louisiana*, 350 U.S. 91, 164, 76 S.Ct. 158, 100 L.Ed. 83 (1955). Debatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel, even if, in hindsight, it looks as if a better strategy had been available. *State v. Cook*, 65 Ohio St.3d 516, 524, 605 N.E.2d 70 (1992).

{¶ 36} "To establish prejudice, a defendant must demonstrate that a reasonable probability exists that but for counsel's errors, the result of the trial would have been different." *State v. Walters*, 4th Dist. Washington Nos. 13CA33 and 13CA36, 2014-Ohio-4966, ¶ 24, citing *State v. White,* 82 Ohio St.3d 15, 23, 693 N.E.2d 772 (1998). "Furthermore, courts may not simply assume the existence of prejudice, but must require that prejudice be affirmatively demonstrated." *Id.*

{¶ 37} In *Pasqualone*, the Ohio Supreme Court held that "an accused's attorney is capable of waiving his [or her] client's right to confrontation by not demanding that a laboratory analyst testify pursuant to the opportunity afforded by [the relevant statute], because whether to cross-examine a particular witness is properly viewed as a decision relating to trial tactics or strategy." *State v. McCausland*, 124 Ohio St.3d 8, 2009-Ohio-5933, 918 N.E.2d 507, ¶ 14, quoting *Pasqualone*, 121 Ohio St.3d 186, 2009-Ohio-315,

903 N.E.2d 270, at ¶ 44. "[D]ecisions regarding cross-examination are within trial counsel's discretion and generally do not form the basis for a claim of ineffective assistance of counsel." *State v. Harris*, 10th Dist. Franklin Nos. 09AP-578, 09AP-579, 2010-Ohio-1688, ¶ 28, citing *State v. Flors*, 38 Ohio App.3d 133, 139, 528 N.E.2d 950 (1987).

{¶ 38} By asserting the affirmative defense of medical authorization, Detienne was admitting the facts claimed by the prosecution and then relying on independent facts or circumstances that he claimed exempted him from liability. Thus, trial counsel's decision to forgo demanding Pardi's testimony could be viewed as sound trial strategy and cannot form the basis of a claim of an ineffective assistance of counsel.

{¶ 39} Accordingly, we overrule Detienne's third assignment of error.

## IV. Conclusion

{¶ 40} Having overruled Detienne's three assignments of error, we affirm the judgment of the trial court.

JUDGMENT AFFIRMED.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED. Appellant shall pay the costs.

The Court finds that reasonable grounds existed for this appeal.

It is ordered that a special mandate issue out of this Court directing the Athens Municipal Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Harsha, J, and Abele, J: Concur in Judgment and Opinion.

For the Court

BY: _____
        Marie Hoover, Judge

### **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**